UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN USZTICS,

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

    Defendant.

Case No. 14-cv-11940
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [9] AND GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [12]**

    Plaintiff Susan Usztics applied for short-term disability benefits through her employer's insurance plan in February 2014 following a flare-up of her fibromyalgia syndrome. Defendant Unum Life Insurance Company of America denied her claim and affirmed its decision on appeal. Usztics now asserts that Unum's decision was arbitrary and capricious because Unum failed to order an independent medical examination, had a nurse (rather than a rheumatologist) review her medical record, and failed to address her primary disabling conditions in its findings. Having carefully reviewed the briefing, the Court finds that oral argument will not aid in resolving the pending motions. *See* E.D. Mich. LR 7.1(f)(2). The Court agrees with Defendant that Usztics did not provide objective evidence that she was disabled within the meaning of the Policy as of her alleged onset date. Therefore, the Court will grant Unum's Motion for Judgment and deny Usztics'.

**I. STANDARD OF REVIEW**

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[U]nder *Bruch*, application of the highly deferential arbitrary and capricious standard of review is appropriate only if the plan grants the administrator authority to determine eligibility for benefits or to construe the terms of the plan." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996).

Usztics "accept[s] for this mediation that arbitrary and capricious is the standard of review." (Dkt. 9-1, Pl.'s Mot. at 6.) Unum says that the Court "must apply a de novo standard of review[.]" (Dkt. 12, Def.'s Mot. at 5.) Unum's assertion is puzzling not only because it stands to benefit from the arbitrary-and-capricious standard but also because of the following statement in the Policy: "The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan." (Dkt. 8-2, Policy at PageID 378.) The Court finds that this is a clear grant of discretion to Unum. *See Moss v. Unum Life Ins. Co.*, 495 F. App'x 583, 590 (6th Cir. 2012) (holding that the same language in another Unum policy "vest[ed] [Unum] with complete discretion in making eligibility determinations" (citing *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005)). Therefore, arbitrary and capricious review applies. *See also Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (applying arbitrary and capricious review and noting that "[i]ndeed, the plaintiff

conceded that review for arbitrariness was the correct standard of review here") *aff'd sub nom. Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

Under the arbitrary and capricious standard, the Court will uphold Unum's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id.* "Although that standard is deferential, it is not a rubber stamp for the administrator's determination." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006). "This obligation inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). On review, this Court considers only the evidence before the plan administrator at the time the employee's disability eligibility was determined. *Yeager*, 88 F.3d at 381.[1]

## II. FACTUAL BACKGROUND

Plaintiff Susan Usztics is a 59-year-old woman who formerly worked as a program manager for MSX International, Inc. for over fifteen years. (Dkt. 8-1, Administrative Record ("AR") at 000034.) She last worked on February 4, 2014. (AR at 000034.) The next day, she applied for short-term disability, citing fibromyalgia syndrome and anxious depression. (*Id.* at 000048.)

The Unum Policy defined "disability" as follows:

You are disabled when Unum determines that: you are limited from performing the material and substantial duties of your regular occupation due to sickness or

---

[1] Accordingly, the Court does not consider Dr. Torregrosa's May 16, 2014 letter (Dkt. 9-8) or Usztics' assertion that she needs a cane to "get around" (Pl.'s Mot. at 10). *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (6th Cir. 2006) ("The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.").

3

> injury; and you have a 20% or more loss in weekly earnings due to the same sickness or injury.
>
> . . .
>
> Material and substantial duties means duties that: are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified.

(Dkt. 8-2, Policy at PageID 344, 368.)

As part of the claim review, Unum collected information on Uzstics' job requirements. According to a job description mailed to Unum, the Program Manager position "[p]rovid[es] PM support for global rollout of PeopleSoft General Ledger, Accounts Receivables, and Billing." (*Id.* at 000048.) An Unum representative also interviewed a representative of MSX International. (*Id.* at 000045.) The representative stated that "she believes [the PM position] is a sedentary office job" and that there "may be" accommodations available. (*Id.*)

In her disability application, Usztics stated that she first noticed symptoms of fibromyalgia in 1997. (*Id.*) These symptoms included "leg arm pain[,] cramping[, and] overall pain." (*Id.*) However, she did not receive specialized treatment for the condition until 2006. (*Id.* at 000035.) At that point, she began treating with Dr. Luis E. Torregrosa, a rheumatologist. (*Id.*) Unum requested Torregrosa's treatment records for Uzstics from July 1, 2013 through February 26, 2014. (*Id.* at 000055.) There were four recorded visits during this time.

The first visit occurred on June 11, 2013. (*Id.* at 000086.) Usztics reported that she had recently returned from a trip to Pennsylvania and "began experiencing an acute exacerbation of her fibromyalgia with worsening pain[.]" (*Id.*) She reported that the pain extended to her "trunk and all four extremities." (*Id.*) During the physical exam, "[t]ender points were noted in areas including but not limited to the cervical spine, lumbrosacral spine, chest wall, medial aspect of

both knees and lateral epicondycles." (*Id.*) Torregrosa also advised Usztics to stay off work for a few days. (*Id.*) His "Impression" was fibromyalgia syndrome. (*Id.*)

The next visit was on October 21, 2013. (*Id.* at 000078.) At this time, Usztics reported feeling "worse overall . . . having some problems sleeping, has stopped exercising because of worsening of her pain and her pain is present on a chronic widespread basis involving the trunk and all four extremities." (*Id.*) Torregrosa stated that Usztics suffered "dual comorbidities of depression and fibromyalgia syndrome." (*Id.*) His "Impression" was fibromyalgia syndrome. (*Id.*)

On November 11, 2013, Torregrosa stated that "[o]verall issues remain[ed] essentially unchanged but she [was] tolerating her medications well and might be doing somewhat better from a mood perspective." (*Id.* at 000077.) His "Impression" was fibromyalgia syndrome and associated depression. (*Id.*)

Usztics' fourth recorded visit to Torregrosa was on February 5, 2014. (*Id.* at 000074.) At that time, Torregrosa again stated, "Tender points were noted in areas including, but not limited to the cervical spine, lumbosacral spine, chest wall, medial aspects of knees and lateral epicondyles." (*Id.*) He said that because of the "severity of her symptoms," he and Usztics had decided that she would need to be off work for a "couple of months." (*Id.*) He also wrote a note to MSX stating, "Ms. Usztics is to be off work until April 4, 2014 due to a flareup of her fibromyalgia syndrome." (*Id.* at 000075.)

In the application, Torregrosa advised Unum that "[t]his patient is completely disabled at this time and is not able to work in any capacity" as of February 4, 2014 (*Id.* at 000039.) He stated that Usztics' treatment plan included "multiple meds: Paxil 30 mg/day, Pregabalin . . . Amitriptiline, Sonma, [and] Norco[.]" (*Id.* at 000038.) He stated that she had the capacity to sit,

5

stand, walk, twist or bend, reach above shoulder level, and lift up to ten pounds "[o]ccasionally," which meant up to one-third of the workday. (*Id.*) He stated that she could "[n]ever" climb or lift over 11 pounds. (*Id.*) He also said that Usztics was experiencing "extreme symptoms" from her fibromyalgia and that he was "not able to provide . . .a definite date of return to work[.]" (*Id.* at 000067.)

An Unum representative interviewed Usztics on February 21, 2014. (*Id.* at 000041.) Usztics stated that "she feels [she] has a lot of problems with extremities, charlie horses, shooting pains in her legs . . . pains shoot anywhere from fingertips up to her shoulders . . .sometimes she is in total pain." (*Id.*) Usztics reported that she practiced yoga and stretching a "couple of times a week" but was not otherwise participating in an exercise program. (*Id.*) Usztics stated that in a typical day, she wakes up between 7:00am and 8:30am, watches television for about an hour, and does "personal things around the house." (*Id.*) She spends a lot of time filling out paperwork for her disability. (*Id.*) By around 1:30pm, the "pain is too much" and she takes SOMA and Vicodin and lies down. (*Id.*) As of February 11, 2014, she had not been referred to another specialist. (*Id.* at 000143.)

After considering the above information, Unum denied Usztics' claim via a letter dated February 28, 2014. (*Id.* at 000095–99.) After discussing Torregrosa's treatment records and the interview, Unum drew several conclusions. First, Unum recognized that the medical records did "show treatment for Fibromyalgia Syndrome and depression." (*Id.* at 000095.) However, Unum stated, "[t]here is no information in your medical to show a change or worsening in your condition" and that the reports all stated similar levels of pain. (*Id.*at 000096) Thus, "[t]he medical notes from June 19, 2013 through February 05, 2014 [did] not support a change in severity, pattern or medical necessity to limit your activity levels *beginning February 05, 2014*."

(*Id.* (emphasis added).) And further, "there [were] no specific restrictions and/or limitations to help explain which of your occupational duties you cannot do." (*Id.*) Finally, Unum stated, "[o]ne would expect a more aggressive treatment plan," including a "formal exercise program" and "treatment with a behavioral health specialist." (*Id.*)

Usztics submitted a request for reconsideration of the determination. (*Id.* at 000117.) Along with this request, she submitted a copy of Torregrosa's February 5 report. (*Id.* at 000118.) Unum responded on March 18, 2014, advising Usztics that "we reviewed this information and it does not change our original decision." (*Id.* at 000122.)

Usztics appealed the decision on March 21, 2014. (*Id.* at 000134.) She attached a new letter from Torregrosa. (*Id.* at 000135.) Torregrosa first explained that generally, "[f]unctional impairment in fibromyalgia syndrome is related to the patient's level of pain and fatigue, which neither I nor Unum can objectively measure." (*Id.* at 0000135.) Second, he stated that "[o]ver the course of the last year, Mrs. Usztics' 'global severity' has increased to the level where work activities are no longer feasible at this point." (*Id.*) He also stated that while his findings of tender points were helpful to the diagnosis, the fact that they had not become more severe did not bear on the severity of Usztics' symptoms because "[p]hysical examination findings do not correlate with severity in fibromyalgia syndrome[.]" (*Id.* at 000136.)

Torregrosa next responded to Unum's statements in the claim denial letter. As to the statement that more aggressive treatment might be expected, he stated that she was "currently being treated with five different medications" and that there "is no clinical trial consensus evidence to support the usage of stronger narcotics[.]" (*Id.*) Indeed, he opined that "[i]t is my aggressive treatment coupled with her incredible work ethic which has allowed her to remain productive and employed for this many years with this severe condition." (*Id.*) As to Unum's

7

questioning of Usztics not participating in a formal exercise program, he stated that "physical therapy [would be] a questionably indicated modality in this situation[.]" (*Id.*)

Unum referred Usztics' file, including Torregrosa's March 20 letter, to Senior Clinical Consultant Elizabeth Israel, a nurse licensed in Maine. Unum asked Israel to address whether "restrictions are supported as of 02/04/2014; specifically, whether the reported symptoms were consistent with the claim file and whether the claim file supported restrictions that would preclude "sustain[ed] function[.]" (*Id.* at 000142.) On April 8, 2014, Israel concluded that "from a whole person analysis the medical information in the file does not show evidence of functional loss as of 02/04/14." (*Id.* at 000144.) She first observed that Torregrosa's observations "seem to be stereotyped and nearly identical in each office visit," especially regarding "tender points[.]" (*Id.*) She characterized Usztics' treatment as "symptom driven" and noted that Usztics' medications had not changed since October 2013. (*Id.* at 000145.) She also stated that Usztics' reported daily activities were "inconsistent" with a finding of "completely disabled" and "unable to work in any capacity." (*Id.*) She also stated that if Usztics' "depression was impacting her functional capacity one would expect to see some documentation of this insured's symptoms of depression and make the appropriate referrals for treatment." (*Id.*)

Following Israel's assessment, Unum affirmed its initial decision on April 24, 2014. (*Id.* at 000208–11.) Unum emphasized that the record did not show "evidence of functional loss as of February 4, 2014." (*Id.* at 000208.) Unum offered several reasons for this conclusion: (1) "Dr. Torregrosa's physical examinations seem to be stereotyped and nearly identical in each office visit"; (2) the records "contained no documented vital signs, no height, no weight, no general observations, no neurological examinations, or muscoluskeletal examinations"; (3) there were no tests of Uzstics' lower extremities to explore her reports of shooting pain; (4) there were no

8

specialist referrals (including treatment for her depression); and (5) Usztics' medications had not changed since October 2013. (*Id.*) Unum also stated that Usztics' reported daily activities were inconsistent with the assertion that she was "completely disabled and unable to work in any capacity." (*Id.* at 000210.)

Usztics filed suit in state court on April 30, 2014 and Unum removed the Complaint to this Court. (Dkt. 1.) Now before the Court are the parties' cross-motions for judgment on the administrative record. (Dkts. 9, 12.)

### III. ANALYSIS

"The question in any given disability case on 'arbitrary and capricious' review is whether a plan can offer a reasoned explanation, based on the evidence, for its judgment that a claimant was not 'disabled' within the plan's terms." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006). Usztics argues that Unum's decision was arbitrary and capricious because Unum "failed to address" her primary disabling conditions of fibromyalgia and anxiety with depression, and because Unum did not order an independent medical exam of Usztics and instead had a nurse review her file. (Pl.'s Mot. at 7.) The Court analyzes these arguments in turn.

#### A. Objective evidence of disability

Unum first argues that Usztics was required to provide objective evidence of her disability under the Plan's definition. (Def.'s Mot. at 8.) The Court finds that this interpretation of the definition, which requires a claimant to show that she is "limited from performing the material and substantial duties of [her] regular occupation due to sickness or injury; and [she has] a 20% or more loss in weekly earnings due to the same sickness or injury" (Policy at PageID 344), is reasonable. Indeed, "[o]bjective medical documentation of [the claimaint's] functional capacity would have assisted [Unum] in determining whether" the claimant was limited from

performing the material and substantial duties of her regular occupation. *See Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166 (6th Cir. 2007).

The Court recognizes that, as Torregrosa stated in his reports, fibromyalgia syndrome is difficult to measure objectively. *See Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003) (stating that fibromyalgia is "a common, but elusive and mysterious disease . . . . of greatest importance to disability law, its symptoms are entirely subjective."). However, "objective evidence of *disability* due to fibromyalgia can be furnished by a claimant without the same level of difficulty." *Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493, 500 (6th Cir. 2008) (emphasis in original). For example, the Sixth Circuit has recognized that a functional capacity evaluation is "a reliable and objective method of gauging the extent one can complete work-related tasks." *Id.* (citation and internal quotation marks omitted).

Thus, the Court concludes it was not unreasonable for Unum to require objective evidence of Usztics' disability due to fibromyalgia, even where her symptoms would have been largely subjective due to the nature of her disease.

But this does not end the inquiry: in *Huffaker*, the Sixth Circuit implied that an insurer must also "notif[y] [a claimaint] that her file lack[s] the required objective evidence[.]" *Id.* The *Huffaker* Court cited *Johnson v. Metropolitan Life Insurance Co.*, 437 F.3d 809, 814 (8th Cir. 2006), where the Eighth Circuit reasoned that "the plan administrator could require objective evidence of a disability, even when the claimant's alleged disability stemmed from fibromyalgia, so long as the administrator notified the claimant that her file lacked the required objective evidence." Here, Unum stated, "There is no information in your medical to show a change or worsening in your condition. . . . There are no specific restrictions and/or limitations to help explain which of your occupational duties you cannot do." (AR at 000096.) The Court finds that

10

this constitutes sufficient notice, especially where Torregrosa responded to the letter citing his inability to "objectively measure" functional limitations based on Usztics' fibromyalgia. (*Id.* at 000135.)

### B. Unum's determination

Thus, the Court turns to Unum's determination. Usztics argues that Unum's decision was unreasonable for several reasons: (1) Unum's suggestions that Usztics should have been referred to a specialist were unfounded; (2) Unum contradicted itself in reasoning that Usztics was not exercising but also citing her ability to do yoga every other day in another part; and (3) that Unum cited Usztics' daily activities as evidence of her ability to work when those activities were not comparable to the demand of Usztics' job. Unum argues that its conclusions were reasonable because Usztics "offer[ed] no objective evidence that her condition worsened to the point that it impair[ed] her ability to work." (Dkt. 14, Def.'s Resp. at 5.) The Court agrees with Unum.

The first premise of Unum's initial claim denial was that there was no evidence to show that Usztics' objective diagnosis or subjective symptoms had changed since June 2013; that is to say, the record did "not support a change in severity, pattern or medical necessity to limit your activity levels *beginning February 05, 2014*." (AR at 000095 (emphasis added).) In its appeal denial, Unum elaborated that the records "[did] not substantiate or document any abnormalities on physical examination, neurologic evaluation, mental status examination, diagnostic studies, or deficits on your client's functional capacity to support restrictions and limitations *as of February 4, 2014*." (*Id.* at 000209 (emphasis added).) Moreover, there was "no assessment of [Usztics'] functional capacity" and there were "no medication changes" since October 2013. (*Id.* at 000210.)

And according to Unum, Usztics' baseline condition did not demonstrate disability within the meaning of the Policy. Specifically, while Unum did not dispute Torregrosa's diagnosis of fibromyalgia, it did note that Uzstics could dress herself, watch television, meditate, read, and fold clothes. (*Id.*) These activities, Unum stated, belied Usztics' contention that she was "completely disabled and unable to work in any capacity" given that her job was a sedentary desk job. (*Id.*) Unum also cited the lack of "mental status examinations" as support for a finding of nondisability: "If [Usztics'] depression was impacting her functional capacity, one would expect to see some documentation of her symptoms and make the appropriate referrals for treatment." (*Id.*) Moreover, as Unum points out in its motion, Usztics had worked with "no performance issues" during this time period. (*Id.* at 000045.)

Thus, Unum argues, it denied Usztics' application because she could not "satisfy her burden of proof."

Unum's argument is sound. While "[i]t is true that a plan administrator's decision must be based on substantial evidence . . . [i]t is the person claiming benefits that bears the burden to prove [she] is entitled to those benefits under the plan." *Mahone v. Pipefitters Local 636 Fringe Benefits Fund*, No. 09-13621, 2011 WL 3440122, at *5 (E.D. Mich. Aug. 8, 2011) (citing cases); *see also Seiser v. Unum Provident Corp.*, 135 F. App'x 794, 797 (6th Cir. 1991). Indeed, the Unum Policy required Usztics, as part of her claim submission, to "show," among other things, the "date," "cause," and "extent" of her disability, "including restrictions and limitations preventing [her] from performing [her] regular occupation." (Policy at PageID 333.) Where, as here, "the plan administrator denies benefits based on the lack of evidence, it is incumbent on the claimant to point to evidence in the record that contradicts such a finding and demonstrates that

the decision, therefore, is arbitrary and capricious." *Mahone*, 2011 WL 3440122 at *5 (citing *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512–13 (5th Cir. 2010)).

The Court finds that Usztics has failed to point to any evidence that contradicts Unum's finding that she was not disabled within the meaning of the Policy. She has not identified any evidence pointing to her functional capacity aside from Torregrosa's opinion that her global severity had increased to the point that working was no longer feasible. But this conclusory assertion does not show how Usztics was unable to perform the material and substantial duties of a sedentary desk job, especially where, as Unum pointed out in its decisions, Usztics' pain medication and self-reports of pain were largely consistent throughout the six month period preceding her application and she was able to work during that time. *See Boone v. Liberty Life Assur. Co. of Boston*, 161 F. App'x 469, 473 (6th Cir. 2005) ("On this record, we cannot conclude that Liberty acted irrationally in denying Boone's appeal on the ground that there is a 'lack of any positive physical findings that indicate any significant impairment that would substantiate an inability to perform any occupation.'").

Usztics' other arguments miss the mark because they imply that at the administrative level, it was Unum's burden to disprove that she was disabled, rather than Usztics' burden to show that she was disabled. *See Amin v. Bank of Am. Pension Plan for Legacy Companies*, No. 11-13789, 2013 WL 2634639, at *5 (E.D. Mich. June 12, 2013) ("In Plaintiff's view, it was the Committee's burden to review the record of Plaintiff's employment with the predecessors to the Defendant bank, and to then point to specific terms of the Plan as demonstrating why this employment history failed to establish a right to vested pension benefits. . . . Plaintiff's challenge rests upon an impermissible attempt to shift a burden that the law places squarely on Plaintiff— namely, the burden to prove that she is entitled to pension benefits under the Plan.").

### C. File Review

Usztics next presents a two-pronged attack on Unum's review of her file: she first objects to the use of a file review rather than an IME to evaluate her claim, and second, objects to the fact that the review was conducted by a nurse rather than a physician with expertise in fibromyalgia. Neither argument persuades.

The Court first turns to Usztics' claim that Unum should have ordered an independent medical exam ("IME"): "[n]o one who gave an opinion on Plaintiff's ability to work ever saw Plaintiff, let alone examined her." (Pl.'s Mot. at 7.) .

It is true, as Unum argues, that "[t]here is nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *White v. Standard Ins. Co.*, 895 F.Supp.2d 817, 849–50 (E.D. Mich. 2012), *aff'd*, 529 F. App'x 547 (6th Cir. 2013). But this does not mean that an insurer's reliance on a file review will always be reasonable. In *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005), the Sixth Circuit considered an insurer's decision to conduct a file review by a physician in lieu of ordering an IME, which was allowed by the Plan language. The Court found that "while [the insurer's] reliance on a file review does not, standing alone, require the conclusion that [the insurer] acted improperly . . . the failure to conduct a physical examination—especially where the right to do so is explicitly reserved in the plan—may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Id.* That was the situation in *Calvert* because the physician clearly had not reviewed the claimant's "entire file." *Id.* By contrast, in *White*, the district court held that an IME was unnecessary because the insurer and its consulting physician agreed with the plaintiff's doctor's assessment of the plaintiff's functional capacity. 895 F. Supp. 2d at 850. The district court stated that the insurer was "not required to obtain an IME to perform repetitive tests

when [the insurer] relied on one of Plaintiff's treating physician's assessment and the functional capacity tests." *Id.*

Here, neither party has pointed to Plan language specifically reserving the right to an IME. And the Court's review of the record has not uncovered any such language. Moreover, the Court is satisfied that the file review took into account all available medical evidence and that Israel reached her conclusions because there was no objective evidence regarding the limitations imposed by Usztics' fibromyalgia and depression, as was required by the Plan. *See Boone*, 161 F. App'x at 473 ("Liberty, true enough, has not embraced the disability conclusions of these doctors. But it has not 'arbitrarily disregarded' them: It chose not to credit them because they were not supported by objective medical evidence, which is what the plan requires."). The Court finds that it was not incumbent upon Unum to order an IME for Usztics where she had not provided evidence documenting her functional capacity and the Plan language did not contemplate an IME as part of claims processing. *See Sears v. Drees Co.*, No. CIV.A. 13-132-DLB, 2015 WL 779003, at *2 (E.D. Ky. Feb. 24, 2015) ("When a plan, such as the one here, does not require an in-person evaluation, a plan administrator is permitted to rely on a file review. While the decision to do so 'may raise questions about the thoroughness and accuracy of the benefits determination,' this case raises no such concerns.").

Usztics next argues that Unum's decision to have her file reviewed by a nurse, rather than a doctor with expertise in fibromyalgia, was unreasonable. The Sixth Circuit has commented that "there is nothing inherently arbitrary and capricious in allowing a nurse to review a beneficiary's file." *Iley v. Metro. Life Ins. Co.*, 261 F. App'x 860, 864 (6th Cir. 2008). So long as there is a "fulsome review" of available information, *Lewis v. Hartford Life & Acc. Ins. Co.*, No. 3:10CV-710-S, 2011 WL 6292203, at * 3 (W.D. Ky. Dec. 15, 2011), courts have generally allowed file

review by nurses where the plaintiff fails to explain "what reports and diagnoses submitted in support of her application would have been appreciated by a doctor but were beyond the ken of [the nurse]," *Boone*, 161 F. App'x at 474 (6th Cir. 2005).

Usztics has not cited any reports or tests that were "beyond the ken" of Israel. And Israel's report took into account all of the available evidence, including Torregrosa's four reports (and subsequent letter) and the interview with Usztics in reaching her conclusions. She also stated her reasons for disagreeing with Torregrosa's conclusions regarding disability, and as noted above, the Court is satisfied that those conclusions were reasonable. *See Lewis*, 2011 WL 6292203 at *3. Moreover, Unum gave Usztics opportunities to supplement her application and Israel reviewed the additional information she did submit. (AR at 000122–23; 000209–11.)

## IV. CONCLUSION

On this record, the Court cannot find that Unum's decision to deny Usztics short-term disability benefits was arbitrary and capricious. Unum used a permissible method (file review) to examine the evidence that Usztics submitted and reasonably concluded that there was no objective evidence of limitations and restrictions that would prevent her from performing her sedentary desk job. Accordingly, Unum's Motion for Judgment (Dkt. 9) is GRANTED. Usztics' (Dkt. 12) is DENIED. This case is DISMISSED. A separate judgment will follow.

SO ORDERED.

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE

Dated:  August 24, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 24, 2015.

                                        s/Jane Johnson
                                        Case Manager to
                                        Honorable Laurie J. Michelson